IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VOLVO GROUP NORTH AMERICA, LLC, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 7:19-cv-00419 |
| v. | )<br>) By: Elizabeth K. Dillon |
| INTERNATIONAL UNION UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW ("UAW"), et al. | ) United States District Judge<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter is before the court on defendants', International Union United Automobile Aerospace and Agricultural Implement Workers of America (UAW) and its Local 2069, motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Volvo Group North America, LLC (Volvo) filed its complaint on June 6, 2019, seeking declaratory and injunctive relief against the defendants pursuant to Section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Defendants move to dismiss the complaint, arguing that it does not present a "case or controversy" as required by Article III of the United States Constitution and the Declaratory Judgment Act. The court agrees and will therefore dismiss Volvo's complaint.

I.  BACKGROUND

Volvo's action stems from the current collective bargaining agreement (CBA)[1] that is effective from March 17, 2016, through March 16, 2021, between Volvo and a local UAW union

---

[1] The parties note that there are actually three separate agreements, but the court will refer to them collectively as the CBA.

located in Dublin, Virginia. (Compl. ¶ 5, Dkt. No. 1.) Volvo asks the court to determine the validity of certain provisions of the CBA that require it to pay approximately twenty full-time union employees directly. These payments cost Volvo over $1 million in both 2017 and 2018. Volvo asserts that these representatives provide no services to Volvo and are in no way supervised or controlled by Volvo—they work exclusively for the union.[2] (*Id.* ¶¶ 12–18.)

Volvo is concerned that this relationship violates Section 302 of the LMRA. That section states, "[i]t shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value—(1) to any representative of any of his employees who are employed in an industry affecting commerce . . . ." 29 U.S.C. § 186(a). In effect, the disagreement underlying this case highlights a split in authority between *Caterpillar, Inc. v. UAW*, 107 F.3d 1052 (3d Cir. 1997), in which the Third Circuit ruled that similar payments to union representatives did not violate the LMRA, and *Titan Tire Corp. v. USW*, 734 F.3d 708 (7th Cir. 2013), in which the Seventh Circuit expressly disagreed with *Caterpillar*.

Asserting that its payments to UAW representatives violates Section 302(a) and that it could therefore be held criminally liable under the LMRA, Volvo requests that the court determine the parties' rights under the CBA and enjoin future violations of Section 302. It notes that its only alternative would be to stop making payments as required by the CBA. Without a determination in this court, Volvo contends that "labor peace is threatened and the parties risk committing criminal offenses on an ongoing basis." (Compl. ¶ 9.) By Volvo's account, it is stuck between two equally harmful alternatives—continue making payments in violation of the LMRA or cease payments and face civil liability. Alternatively, Volvo asserts that the court has

---

[2] Certain of the representatives provide services to both the union and Volvo; however, Volvo notes that "[w]hile working 'for the union', these Committee-persons perform no services on behalf of Volvo and are not supervised, directed, or controlled by Volvo." (Compl. ¶ 17.)

jurisdiction under § 302(e) of the LMRA, which expressly grants jurisdiction to federal courts "to restrain violations of this section." 29 U.S.C. § 186(e).

Defendants move to dismiss Volvo's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, arguing that there is no justiciable "case or controversy" as required by the Constitution and the Declaratory Judgment Act. (Br. in Supp. 1, Dkt. No. 15.) They note that provisions like the one at issue here are common in CBAs executed by Volvo and other employers throughout the country and that Volvo has not pointed to any examples of criminal prosecution or threats of criminal prosecution based on similar payments to representatives.[3] (Br. in Supp. 8–9.) Rather, defendants characterize Volvo's lawsuit as an effort to engage in midterm renegotiations of the current CBA.

## II. DISCUSSION

### A. "Case of Actual Controversy" Under the Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In requiring a "case of actual controversy," the Act mirrors the jurisdictional statement in Article III of the United States Constitution granting the federal courts jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see also Aetna Life Ins. Co. v. Hayworth*, 300 U.S. 227, 239–40 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional

---

[3] Notably, under § 302(b)(1), defendants could also be subject to criminal liability if Volvo's interpretation of the LMRA is correct. *See* 29 U.S.C. § 186(b)(1) (making it unlawful to "request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or deliver of any money or other thing of value prohibited by subsection (a)"). But defendants note that they have no reason to believe they will be subject to criminal liability under § 186(b)(1) and therefore seek to enforce the CBA.

3

provision and is operative only in respect to controversies which are such in the constitutional sense."). Defining the scope of the case-or-controversy requirement, the Supreme Court has required that a dispute be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration in original) (quoting *Aetna*, 300 U.S. at 240–41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In their briefs, all parties cite to the Supreme Court's decision in *MedImmune*. Defendants attempt to distinguish Volvo's predicament from that involved in MedImmune to argue that a substantial controversy of sufficient immediacy is not at issue here, while Volvo asserts that it faces a very similar situation. Volvo has continued making its payments to UAW to avoid potential contract and labor disputes but argues that, in doing so, it has exposed itself to criminal liability.

*MedImmune* involved a patent dispute in which MedImmune agreed to pay royalties under a licensing agreement to Genentech. When Genentech's patent matured, MedImmune believed it no longer needed to pay royalties under the original licensing agreement. However, Genentech sent a letter asserting its expectation that royalty payments should continue. MedImmune could either continue paying royalties under the agreement or stop paying, at which point Genentech could terminate the license and sue for patent infringement. The Court noted

4

that if Genentech prevailed in a patent infringement action, MedImmune could be required to pay treble damages and would be enjoined from selling the product that accounted for over 80% of its revenue. *Id.* at 121–22. The Court ultimately held that the dispute was a case or controversy within the meaning of Article III.

In distinguishing this case from *MedImmune*, defendants rely on several theories. They first argue that Volvo faces a contrived dilemma here, as Volvo has not violated the criminal provisions of the LMRA. Of course, to make that determination would require the court to resolve the circuit split between *Titan Tire* and *Caterpillar*, effectively deciding the underlying dispute on the merits. In other words, dismissing Volvo's case for this reason would require the court to determine the legality of the CBA provision, effectively granting Volvo the declaratory relief it seeks.

Even assuming the CBA violates the LMRA, defendants then attempt to distinguish this case from *MedImmune* by minimizing the dilemma Volvo faces. Defendants note that the civil liability at stake here is not nearly as significant as that in *MedImmune*, where future litigation could have resulted in a loss of 80% of MedImmune's profits. Instead, defendants argue that if Volvo were subject to civil liability, it would merely be required to pay whatever backpay had accrued since it ceased payments under the CBA. Thus, as argued, Volvo's alleged injury is not real and substantial enough to meet the Supreme Court's test. However, the Supreme Court anticipated this interpretation of its decision in *MedImmune* and expressly rejected it. *See MedImmune*, 549 U.S. at 133 ("The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III."). Moreover,

5

defendants ignore the fact that if Volvo withholds payments despite the CBA, Volvo may also be liable under §§ 8(a)(5) and 8(d) of the National Labor Relations Act for an unfair labor practice.

Nonetheless, the court finds that Volvo has failed to assert a case or controversy and will therefore dismiss the case. At the heart of this case are recent developments between Volvo or its subsidiaries and other chapters of the UAW. Volvo's CBAs with different union chapters are up for renewal, and Volvo seeks to impose new terms that would eliminate payments by Volvo to union representatives. After reaching a stalemate in negotiations, Volvo filed this action. Volvo does not allege in this case that defendants have threatened litigation if Volvo stops making payments under the CBA, although defendants concede that they would likely attempt to compel arbitration in the event of such a breach. Instead, Volvo relies upon a conversation between UAW and Volvo regarding the proper application of the LMRA's criminal provisions in which UAW merely disagreed with Volvo's interpretation of the LMRA. Even given the context of negotiations between similar parties across the country, the fact that UAW has merely disagreed with Volvo's interpretation of the LMRA does not create an immediate and real controversy between these parties that is properly before this court.

More importantly, Volvo has not supported its allegation that continued payments under the CBA put it at risk of criminal prosecution. In fact, as defendants have pointed out, the CBA provisions at issue have been in agreements between Volvo and UAW for years. Yet, despite the Seventh Circuit's decision in *Titan Tire* in 2013, Volvo reupped its agreement with UAW three years later in 2016. Since *Titan Tire*, Volvo has pointed to no change in circumstance on which it bases its new position regarding the legality of the CBA. It cites no cases in which charges have been pursued for similar agreement provisions and no evidence that a change in the

6

attorney general's interpretation or enforcement of the LMRA now threatens prosecution for Volvo's continued payments under the CBA.

Initially, it appears Volvo filed its complaint to remove itself from its precarious situation between a rock and a hard place—between civil or criminal liability. But the fact that Volvo, six years after *Titan Tire*, has changed its position as to the legality of its payments under the CBA, based on nothing more than what appears to be a simple evolution of its legal opinion, does not create a real and substantial controversy warranting the intervention of a federal court. Instead, it appears Volvo is effectively seeking an advisory opinion from the court as to whether it may disavow its duties under the CBA. Allowing Volvo to proceed would invite contracting parties to fabricate similar disputes in order to avoid their contractual duties or force midterm renegotiations.

In this regard, Volvo's case is distinguishable from *MedImmune*. Volvo points out that *MedImmune* extended jurisdiction to "situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party." 549 U.S. at 130 (emphasis omitted). The Court further recalled its holding from *Altvater v. Freeman*, 319 U.S. 359, 365 (1943), in which it stated that "the requirements of [a] case or controversy are met where payment of a claim is demanded as of right and where payment is made, but where the involuntary or coercive nature of the exaction preserves the right to recover the sums paid or to challenge the legality of the claim." *Id.* at 365 (alteration in original). But the plaintiff in *MedImmune* faced a loss of its rights under either option presented—it faced either financial loss from continued royalty payments or a lawsuit that could cause the demise of the plaintiff's business. Conversely, without a showing that it faces possible criminal prosecution, Volvo presents the manufactured dilemma of either continuing the payments it agreed to make under

7

the CBA until 2021 or stopping payments and facing liability for breaching its agreement.[4]  The same could be said for any party to a contract.[5]

**B. Jurisdiction Under § 302(e)**

Alternatively, Volvo cites to *Employing Plasterers' Assoc. of Chicago v. Journeymen Plasterers' Protective & Benevolent Society of Chicago, Local No.* 5, 279 F.2d 92 (7th Cir. 1960), for the proposition that § 302(e) of the LMRA provides the court with jurisdiction to hear this case.  Section 302(e) provides jurisdiction to district courts "to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of chapter 6 of this title."  29 U.S.C. 186(e).  Accordingly, Volvo asserts that the court has subject-matter jurisdiction based on the express grant of authority in § 302(e).

However, while § 302(e) grants jurisdiction to *enjoin* violations of the LMRA, it does not create a private right of action for parties to *establish* a violation of the LMRA.  *See Ohlendorf v.*

---

[4] Importantly, this is not to say that Volvo's payments under the CBA are legal.  It is possible Volvo's newly stated legal opinion is correct in light of *Titan Tire*.  As presented, however, Volvo has failed to allege a case or controversy as required by the Declaratory Judgment Act.

Rather this more closely resembles an unconstitutional challenge to a possible future application of a federal criminal statute like that in *Adult Video Ass'n v. U.S. Dept. of Justice*, 71 F.3d 563 (6th Cir. 1995).  *See also Crooker v. Magaw*, No. 95-5344, 1996 WL 523794 (D.C. Cir. Aug. 28, 1996).  There, the plaintiff sought a declaratory judgment that an adult film was not legally obscene and was therefore protected by the First Amendment.  It reasoned that "if the film were to be considered obscene . . . it would subject Adult Video's members to criminal prosecution."  *Id.* at 565.  The court held that the plaintiff lacked standing because there was no injury in fact—the plaintiff merely alleged "a hypothetical harm *if*, at some point in the future, its members decide to distribute [the film] . . . ; [*if*] the government decides to prosecute for that distribution; and *if* a jury subsequently finds the film to be constitutionally protected material."  *Id.* at 567.

In that regard, the court questions whether the issue presented by defendants' motion is better reviewed under the standing doctrine.  *See MedImmune*, 549 U.S. at 128 n.8 ("The justiciability problem that arises, when the party seeking declaratory relief is himself preventing the complained-of injury from occurring, can be described in terms of standing (whether plaintiff is threatened with 'imminent' injury in fact 'fairly . . . trace[able] to the challenged action of the defendant) . . . ." (alteration in original) (citation omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))).  In either case, the court lacks jurisdiction over the instant dispute.

[5] In support of its position, Volvo cites to *International Longshoremen's Association, AFL-CIO v. Seatrain Lines, Inc.*, 326 F.2d 916 (2d Cir. 1964).  But Volvo does not cite, and the court has not found, any Supreme Court or Fourth Circuit authority adopting *Longshoremen*'s reasoning.  Accordingly, *Longshoremen* is not binding on this court.  For the reasons stated above, the court disagrees with *Longshoremen*.  This decision aligns with a recent opinion from the Northern District of Mississippi in a nearly identical case involving Volvo and UAW.  *See Volvo Grp. N. Am., LLC v. Int'l Union United Automobile Aerospace & Agricultural Implement Workers of Am., UAW*, No. 3:19CV119-NBB-RP, 2020 WL 1467751 (N.D. Miss. Mar. 26, 2020).

*United Food & Commercial Workers Int'l Union*, 883 F.3d 636 (6th Cir. 2019) ("That provision grants *jurisdiction* to the federal courts 'to restrain violations of this section.' It says nothing about giving private parties the right to sue . . . ." (citation omitted)). In *Ohlendorf*, the Sixth Circuit clarified that § 302(e) "creates jurisdiction for the courts to restrain violations of § 302 at the request of the Attorney General." It further "provides the courts with jurisdiction to enjoin violations of § 302 in lawsuits *brought under express private rights of action,* as a needed exception to the Clayton Act and the Norris-LaGuardia Act's ban on labor-dispute injunctions." *Id.* at 642–43 (emphasis added).

The court finds *Ohlendorf* persuasive here. Although Volvo seeks to enjoin payments under the CBA, such injunction would necessarily be based on the court's determination that Volvo's payments violate the LMRA. Thus, Volvo does not merely seek to enjoin a violation of the LMRA under § 302(e), but it also attempts to assert a private right of action to enforce the LMRA's criminal provision. As in *Ohlendorf*, the court may not assert jurisdiction over Volvo's action pursuant to § 302(e) alone—Volvo must first identify a private right of action. Because Volvo has not asserted a "case of actual controversy" under the Declaratory Judgment Act, and § 302(e) does not create a private right of action, the court lacks subject matter jurisdiction over Volvo's claim.

## III. CONCLUSION

For the reasons set forth above, the court will grant defendants' motion to dismiss (Dkt.

No. 14) and dismiss Volvo's complaint without prejudice.  A separate order will be entered.

Entered: March 31, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge